CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

4/16/2018

JULIA C. DUDLEY, CLERK
BY:  S/J.Vasquez

DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

| | |
|---|---|
| **KATHRYN ROBERTSON,** ) <br> **ADMINISTRATRIX of** ) <br> **the ESTATE OF** ) <br> **DONNIE ROBERTSON** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **CORPORAL C.J. DIETZ,** ) <br> **DEPUTY ANDREW HEIZER,** ) <br> **DEPUTY JONATHAN WELLS.** ) <br> Serve: 127 Lee Hwy ) <br> Verona, VA 24482 ) <br> ) <br> **Defendants.** ) <br> ) | **CIVIL ACTION NO.** 5:18-cv-00067 |

## COMPLAINT

COMES NOW the Plaintiff, Kathryn Robertson, ("Ms. Robertson" or "the Plaintiff"), in her capacity as the Administratrix of the Estate of Donnie Robertson ("Mr. Robertson"), by counsel, seeking judgment against the Defendants, Corporal C.J. Dietz, Deputy Andrew Heizer, and Deputy Jonathan Wells.  In support of her Complaint, the Plaintiff asserts the following:

### INTRODUCTION

1.     This matter arises out of an unnecessary and excessively forceful seizure of Donnie Robertson, who died shortly after the Defendant used lethal force to restrain him while he was having a severe reaction to an overdose of Wellbutrin, a lawfully prescribed medication for depression.

2.     Ms. Robertson seeks a monetary remedy for the violation of Mr. Robertson's constitutional rights under 42 U.S.C. § 1983 and seeks a remedy under the laws of the

Commonwealth of Virginia.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331.

4.    Personal jurisdiction is proper over the Defendant because he resided and worked within the Harrisonburg Division of the Western District of Virginia at all times relevant to this Complaint.

5.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and assignment to this division is proper pursuant to Local Rule 2(a)(5) because all events related to this matter took place in Augusta County, which is located within the Harrisonburg Division of the Western District of Virginia.

## PARTIES

6.    Plaintiff Kathryn Robertson is an individual and, for all times relevant to this action, a resident and domiciliary of the Commonwealth of Virginia.

7.    Ms. Robertson brings this suit in her capacity as the Administrator of the Estate of Donnie Robertson. Ms. Robertson was qualified and appointed Administrator of Mr. Robertson's Estate by the Augusta County Circuit Court on February 16, 2017.

8.    Defendant C.J. Dietz is an individual and, for all times relevant to this action, was employed by the Augusta County Sheriff's Department and was a resident and domiciliary of the Commonwealth of Virginia.  The Defendant is sued in his individual capacity.

9.    Defendant Andrew Heizer is an individual and, for all times relevant to this action, was employed by the Augusta County Sheriff's Department and was a resident and domiciliary of the Commonwealth of Virginia.  The Defendant is sued in his individual capacity.

2

10.   Defendant Jonathan Wells is an individual and, for all times relevant to this action, was employed by the Augusta County Sheriff's Department and was a resident and domiciliary of the Commonwealth of Virginia.  The Defendant is sued in his individual capacity.

11.   At all times relevant to this Complaint, the Defendants were state actors and acted under color of state law.

## FACTS

12.   On September 2, 2016, Ms. Robertson was in her home with her husband, Mr. Robertson, and their two grandchildren.

13.   Mr. Robertson had a prescription for Wellbutrin, a medication used to treat clinical depression and seasonal affective disorder, as well as other mood disorders.  Mr. Robertson took his prescribed Wellbutrin daily.

14.   On September 2, 2016, Mr. Robertson approached Ms. Robertson and advised her that he had ingested too much of his medication.  He informed her that he had taken eight Wellbutrin pills, which was enough to potentially cause a fatal overdose.

15.   Fearing that Mr. Robertson could overdose on the medication, Ms. Robertson called 911 and requested medical help.  The 911 dispatcher informed her that the rescue squad and sheriff's deputies were on the way.

16.   The first person to respond to Ms. Robertson's home was Corporal C.J. Dietz.  Dietz was employed as a process service deputy for the Augusta County Sheriff's Office.

17.   Defendant Dietz was aware when he responded to the residence that he was responding to a report of a man overdosing on mental health medication and experiencing a mental health episode, who required medical assistance.

18.   Ms. Robertson went out to her elevated side porch to greet Dietz.  He asked her what

3

was going on and to come down to ground level to speak with him.

19.   Ms. Robertson was not armed.  There was no indication whatsoever that any criminal activity was occurring or that anyone was in danger, other than Mr. Robertson who was in need of medical assistance.

20.   Ms. Robertson again told Defendant Dietz that she feared her husband had overdosed and that he needed medical assistance right away.

21.   Defendant Dietz told Ms. Robertson to get Mr. Robertson to come outside.

22.   Defendant Dietz told Ms. Robertson that deputies had been called to respond to her address before and that Mr. Robertson had a reputation for having "an attitude."

23.   Despite these irrelevant allegations, Defendant Dietz knew that he had been summoned to the Robertson residence on this occasion by Ms. Robertson for medical assistance related to Mr. Robertson's suspected overdose of Wellbutrin.

24.   Ms. Robertson again explained that they had called on this occasion for emergency medical assistance, and that there was no alleged criminal activity.

25.   When Mr. Robertson came outside, he was experiencing the effects of an overdose on Wellbutrin.  He was scared, disoriented, and upset.

26.   Ms. Robertson told Defendant Dietz that the reason that Mr. Robertson was acting panicked was due to the overdose of his medication.

27.   Defendant Dietz, nevertheless, immediately became aggressive with Mr. Robertson and began shouting at him.

28.   Defendant Dietz then ordered Mr. Robertson to come down the stairs and Mr. Robertson complied.

29.   Mr. Robertson did not threaten or attempt to attack Defendant Dietz.  Instead,

4

confused, he walked *away from* Defendant Dietz in the direction of a fire pit near the front entrance of the house.  Defendant Dietz shouted at Mr. Robertson not to walk away from him.

30.   At one point, Mr. Robertson walked toward Defendant Dietz, which then caused Defendant Dietz to deploy his nightstick and order Mr. Robertson to keep his distance.  Mr. Robertson immediately turned around and walked away.

31.   Upon seeing Defendant Dietz deploy his nightstick, Ms. Robertson pleaded with Defendant Dietz not to hurt Mr. Robertson and told him that Mr. Robertson was having a panic attack and severe medical issue related to the suspected overdose.

32.   Ms. Robertson told Defendant Dietz multiple times that the cause of Mr. Robertson's unusual behavior was the effects of his ongoing overdose and she repeatedly asked him to call for an update on the expected arrival time of the rescue squad.

33.   Upon information and belief, Defendant Dietz never attempted to determine the estimated arrival time of the rescue squad.  Instead, he continued to shout at and antagonize Mr. Robertson.

34.   Noticing Defendant Dietz's aggressive demeanor, Ms. Robertson warned him that attacking Mr. Robertson could kill him due to his overdose and multiple other pre-existing health issues.

35.   Nevertheless, Defendant Dietz indicated that he intended to seize and restrain Mr. Robertson, despite having no objectively reasonable basis to do so.

36.   Ms. Robertson begged Defendant Dietz to wait for the rescue squad to arrive rather than restrain Mr. Robertson.  Mr. Robertson posed no threat to anyone, including himself.

37.   Mr. Robertson was clearly not armed.  Mr. Robertson never threatened, attempted to injure, or otherwise acted in anyway indicating that he posed any physical threat to Defendant

5

Dietz.

39.    For the majority of the incident, Mr. Robertson was walking in circles around his yard ignoring both Ms. Robertson and Defendant Dietz.

40.    It would have been clear to any reasonable law enforcement officer that Mr. Robertson was experiencing a mental health episode and/or a medical emergency and that he posed no threat to himself or others.

41.    Fearing that Defendant Dietz might harm Mr. Robertson, Ms. Robertson called 911 at least two additional times to inquire about the arrival of the rescue squad.

42.    Defendant Dietz attempted to approach Mr. Robertson to restrain him, but Mr. Robertson *walked away from* Defendant Dietz and continued to walk around the yard in circles as the Defendant followed him and ordered him to stay still so he could be handcuffed.

43.    Upon information and belief, at some point while Defendant Dietz was interacting with Mr. Robertson, Defendants Andrew Heizer and Jonathan Wells arrived at the scene.

44.    Mr. Robertson tripped on a tree root and fell to his hands and knees.

45.    Mr. Robertson was in the process of trying to stand back up when Defendant Dietz pressed his foot or knee on Mr. Robertson's back and forced him to the ground.

46.    Mr. Robertson struggled to stand back up as Defendant Dietz held him down with his foot.  Mr. Robertson was unable to get up with Defendant Dietz on top of him.

47.    While Mr. Robertson was lying face down on the ground, Defendant Dietz kneeled and positioned his knee on top of Mr. Robertson's neck.

48.    Terrified, Mr. Robertson began to flail.

49.    In response, Defendant Dietz pressed his knee down into Mr. Robertson's neck harder, placing his weight almost entirely on Mr. Robertson's neck, causing him to begin to

6

suffocate.

50.   Ms. Robertson shouted to Defendant Dietz that Mr. Robertson could not breathe, that he had respiratory problems, and that he might kill Mr. Robertson if he did not release him.  She told him that Mr. Robertson was turning blue in the face.

51.   Defendants Heizer and Wells saw that Mr. Robertson was suffering from significant injury due to Defendant Dietz's actions, but neither of them made any attempt to prevent Defendant Dietz from continuing to harm Mr. Robertson.

52.   While Defendant Dietz had his knee pressed in Mr. Robertson's neck, Defendants Heizer and Wells came and attempted to handcuff Mr. Robertson's hands behind his back.  During this time, Mr. Robertson was clearly continuing to struggle to breathe while Defendant Dietz was suffocating him.

53.   Defendant Dietz failed to release Mr. Robertson despite the fact that he was clearly harming him, and despite the fact that Ms. Robertson was pleading with him and saying, "you're going to kill him."  The other Defendants took no action to assist Mr. Robertson or to stop Defendant Dietz.

54.   Defendant Dietz, without taking his knee away from Mr. Robertson's neck, aggressively told Ms. Robertson to stop touching him and otherwise threatened her.

55.   Defendant Dietz kept his knee on Mr. Robertson's neck for three or four minutes, slowly killing him.  Defendants Heizer and Wells took no action to stop Defendant Dietz, despite the fact that he was suffocating Mr. Robertson on the ground (it was readily apparent to all due to Mr. Robertson's skin turning blue).

56.   After Mr. Robertson stopped moving completely, some or all of Defendants Dietz, Heizer, and Wells placed him in handcuffs.  At this point they rolled Mr. Robertson's body over

and observed that Mr. Robertson's eyes were not blinking, he was not breathing, and that he was blue around the lips.

57. Once Mr. Robertson was unresponsive and in handcuffs, Defendant Dietz finally went back to his car to call for the rescue squad.

58. Some of the Defendants began performing chest compressions on Mr. Robertson.

59. By the time the rescue squad arrived Mr. Robertson had suffered severe, life threatening injuries at the hands of Defendant Dietz.

60. The rescue squad transported Mr. Robertson to Augusta Medical Center emergency room. By the time Mr. Robertson arrived, he had already undergone cardiac arrest as a result of Defendant Dietz attack.

61. Mr. Robertson remained at Augusta Medical Center in critical condition for three days until he passed away on September 5, 2016.

62. After an autopsy conducted on September 6, 2016, the medical examiner noted Mr. Robertson's cause of death as "cardiac arrhythmia due to uncertain etiology during physical restraint by law enforcement."

63. Mr. Robertson's death was directly caused by Defendant Dietz's use of excessive and unnecessary force.

64. Mr. Robertson would have survived the incident if emergency medical help had reached him before Defendant Dietz and the bystander deputies engaged in the behaviors outlined above.

## COUNT I
### False Arrest in Violation of the Fourth Amendment (42 U.S.C. § 1983)
### (All Defendants)

65. The foregoing paragraphs are herein incorporated and re-alleged.

66.    A false arrest in violation of the Fourth Amendment occurs when a law enforcement officer arrests a free citizen without a warrant or probable cause.

67.    The Defendants were called to Mr. Robertson's home to investigate a medical emergency; they had no probable cause to believe that any person had committed any crime.

68.    The Defendants were all aware that Mr. Robertson's perceived failure to abide by orders was due to a mental health episode and not related to any criminal intent.

69.    When Defendant Dietz held Mr. Robertson against the ground by placing his knee and body weight into Mr. Robertson's neck, and then attempted to force him into handcuffs, Defendant Dietz placed Mr. Robertson under arrest without probable cause.

70.    Similarly, Defendants Heizer and Wells participated in the unlawful arrest through their efforts to force Mr. Robertson into handcuffs.

71.    Mr. Robertson's behavior did not pose a threat to himself, to the Defendants, or to anyone else at the scene.

72.    These Defendants did not suspect Mr. Robertson of committing any criminal offense.

73.    These Defendants did not have probable cause to arrest Mr. Robertson, nor did he have any other justifiable reason for placing Mr. Robertson in handcuffs.

74.    No reasonable law enforcement officer would have believed that he had probable cause to arrest Mr. Robertson under these circumstances.

## COUNT II
### Use of Excessive Force in Violation of the Fourth Amendment (42 U.S.C. § 1983)
### (All Defendants)

75.    The foregoing paragraphs are herein incorporated and re-alleged.

76.    "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

9

77.    Defendants Dietz, Heizer, and Wells were all aware that Mr. Robertson was suffering from an overdose of a prescription mental health medication.

78.    The Fourth Circuit has clearly stated that "officers who encounter an unarmed and minimally threatening individual who is exhibiting conspicuous signs that he is mentally unstable must de-escalate the situation and adjust the application of force downward." *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 900 (2016) (internal citations omitted).

79.    In addition to the fact that Ms. Robertson had told Defendants that Mr. Robertson was having a mental health episode related to an overdose of a prescription medication for depression, Mr. Robertson was clearly exhibiting signs of mental instability.

80.    Mr. Robertson had not attacked any of the Defendants, nor had he stated any threats to attack the Defendants.

81.    At the time when Mr. Robertson fell to his hands and knees, he was neither a danger to himself nor to others.

82.    In spite of the fact that Mr. Robertson was minimally threatening and exhibiting clear signs of mental instability, Defendants Dietz, Heizer, and Wells did not adjust their application of force downward, despite the constitutional requirement to do so.

83.    Given that Mr. Robertson was unarmed and minimally threatening, none of the Defendants had any justifiable reason to engage Mr. Robertson prior to the arrival of trained medical responders.

84.    Restraining Mr. Robertson was not necessary for protecting the Defendants or others. Defendants Dietz, Heizer, and Wells had no justification for using any form of physical force to restrain Mr. Robertson.

85.    In spite of the fact that no force at all was necessary, justified, or reasonable,

Defendant Dietz held Mr. Robertson on the ground and placed the bulk of his weight onto Mr. Robertson's neck, suffocating him and sending him into cardiac arrest.

86.    Defendants Heizer and Wells restrained Mr. Robertson's hands without need, preventing him from holding himself off the ground, and by their actions further obstructed Mr. Robertson's ability to breathe.

87.    The force used by these Defendants constituted objectively unreasonable and excessive force.  Under no circumstances would any objectively reasonable officer believe that choking and suffocating a citizen who called for medical assistance and was acting mentally unstable was reasonable, appropriate or constitutional.

88.    The use by Defendants of excessive and unreasonable force directly caused Mr. Robertson's death.

89.    Any reasonable law enforcement officer would have known that the level of force employed by the Defendants was not reasonable or necessary.

### <u>COUNT III</u>
### 42 U.S.C. § 1983 Bystander Liability
### (Defendants Heizer and Wells)

90.    The foregoing paragraphs are herein incorporated and re-alleged.

91.    At all relevant times, Defendants Heizer and Wells were each under a duty to enforce the law.

92.    At all relevant times, Defendants Heizer and Wells observed objectively unlawful and unconstitutional conduct as described herein, while having a duty to enforce the law and stop the unlawful and unconstitutional conduct, and each failed to do so.

93.    Defendants Heizer, and Wells were both confronted by the unlawful and unconstitutional actions of Defendant Dietz, had power to stop Defendant Dietz and to save Mr. Robertson, and each chose not to do so.

94. Defendants' failures constitute actionable bystander liability under 42 U.S.C. . § 1983.

95. The failure of these Defendants to enforce the law and stop the unlawful and unconstitutional conduct directly and proximately contributed to cause Mr. Robertson's death or otherwise failed to prevent it.

**COUNT IV**
**False Arrest in Violation of Virginia Law**
**(All Defendants)**

96. The foregoing paragraphs are herein incorporated and re-alleged.

97. By forcing Mr. Robertson to the ground and placing him in handcuffs, Defendants Dietz, Heizer, and Wells placed Mr. Robertson under arrest.

98. The Defendants did not have probable cause to arrest Mr. Robertson.

99. The Defendants did not have a warrant authorizing them to arrest Mr. Robertson.

100. The Defendants actions constitute a false arrest under Virginia law.

**COUNT V**
**Battery in Violation of Virginia Law**
**(All Defendants)**

101. The foregoing paragraphs are herein incorporated and re-alleged.

102. Physical contact with Mr. Robertson by Defendants Dietz, Heizer, and Wells was unwanted, unnecessary, and harmed Mr. Robertson.

103. The Defendants' physical contact with Mr. Robertson was harmful and offensive.

104. The Defendants' unwanted and harmful physical contact with Mr. Robertson was not justified in any way.

105. These actions constitute a battery under Virginia law.

## COUNT VI
### Gross Negligence
### (All Defendants)

106.  The foregoing paragraphs are herein incorporated and re-alleged.

107.  The Defendants each had a duty to exercise reasonable care in regard to their attempt to restrain Mr. Robertson.

108.  Because the Defendants were on notice with regard to Mr. Robertson's mental incapacity when they made the decision to arrest/restrain him, the Defendants owed Mr. Robertson a special duty of care to ensure Mr. Robertson's safety.

109.  In spite of the aforementioned duty, Defendants were grossly negligent in that the Defendants restrained Mr. Robertson in a manner that placed him in substantial danger of bodily harm or death, despite their knowledge that Mr. Robertson was suffering from mental incapacity and did not pose a threat to himself or others.

110.  As a direct and proximate result of the Defendants' grossly negligent manner of restraining Mr. Robertson, Mr. Robertson suffered substantial injury, pain and suffering, and eventually death.

111.  By unnecessarily restraining Mr. Robertson, while aware of his suffering from an objectively serious mental condition, the Defendants acted with such a degree of negligence so as to show a complete disregard for Mr. Robertson's safety.

## COUNT VII
### Wrongful Death Action
### (All Defendants)

112.  The foregoing paragraphs are herein incorporated and re-alleged.

113.  As a result of the Defendants' actions as described herein, Mr. Robertson sustained

serious injuries ultimately causing his wrongful death.

114. As a direct and proximate result of the Defendants' indifferent, willful, wanton, reckless, grossly negligent and negligent acts as set out above, Mr. Robertson's beneficiar(ies) suffered one or more of the following damages:

    a.      Funeral and burial expenses;

    b.      Sorrow, mental anguish and loss of solace;

    c.      Loss of income;

    d.      Loss of services, protection, care and assistance.

115. As such, Plaintiff seeks actual and punitive damages and such other and further relief as this honorable court and the jury deem just and proper.

## COUNT VIII
### Survival Action
### (All Defendants)

116. The foregoing paragraphs are herein incorporated and re-alleged.

117. As a result of the above referenced acts, Mr. Robertson suffered conscious pain and suffering, personal injuries and trauma prior to his death, funeral expenses, other compensatory damages, and his estate is entitled to punitive damages in an amount to be determined by a jury.

118. The Defendants' acts and/or omissions as described herein violated the laws of the Commonwealth of Virginia and violated each Defendants' obligations and duties to Mr. Robertson.

119. Each of these acts and/or omissions proximately caused Mr. Robertson's injuries, suffering, and death.

WHEREFORE, based upon the foregoing causes of action, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount in excess of Five Million Dollars

14

($5,000,000.00) for compensatory damages, together with costs incurred in the pursuit of just resolution to this matter, prejudgment and post-judgment interest, and attorneys' fees.

WHEREFORE, the Defendants' conduct, having been so willful, wanton, and/or reckless as to evince a conscious disregard for the rights of others, Plaintiff demands the award of punitive damages against all Defendants, jointly and severally, in a just amount to be established at trial, together with prejudgment and post-judgment interest, and allowable costs incurred.

WHEREFORE, Plaintiff seeks such further and additional relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial of all issues so triable.

Respectfully filed,
**KATHRYN ROBERTSON**

_____/s/_____
Seth R. Carroll (VSB No. 74745)
Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
1506 Staples Mill Road, Suite 202
Richmond, VA 23230
Phone: (804) 387-6212
Facsimile: (866) 238-6415
scarroll@hurtinva.com
cbleakley@hurtinva.com

and

Jonathan E. Halperin (VSB No. 32698)
Andrew Lucchetti (VSB No. 86631)
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
Tel: (804) 527-0100
Fax: (866) 335-1502
jonathan@halperinlegal.com
andrew@halperinlegal.com
*Counsel for Plaintiff*

15